# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

**16-CV-3676 (JFB)**

ULISES BONILLA,

*Petitioner,*

*-against-*

THOMAS GRIFFIN,

*Respondent.*

### RESPONDENT'S AFFIDAVIT AND MEMORANDUM OF LAW
### IN OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS

**MADELINE SINGAS**
**District Attorney, Nassau County**
**Attorney for Respondent**
**262 Old Country Road**
**Mineola, New York 11501**
**(516) 571-3800**

Tammy J. Smiley
Laurie K. Gibbons
   **Assistant District Attorneys**
      *Of Counsel*

T A B L E   O F   C O N T E N T S

Page

Respondent's Affidavit in Opposition to Habeas Petition .......................................................i-iv

Respondent's Memorandum of Law
     Statement of Facts..............................................................................................................1

Point I
     Petitioner's Legal Sufficiency And Weight-Of-The-Evidence Claims Are
     Partly Procedurally Barred, Partly Present No Federal Constitutional Issue,
     And In Any Event Do Not Merit Habeas Relief.................................................................2

Point II
     The Hearing Court's Decision Denying Petitioner's Motion To Suppress
     His Videotaped Statement To The Police Was Not Contrary To, Or An
     Unreasonable Application Of, Clearly Established Federal Law; Indeed,
     Petitioner Never Made An Unequivocal Request For Counsel ........................................9

Conclusion .......................................................................................................................17

Certificate of Service

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

ULISES BONILLA,                                    RESPONDENT'S AFFIDAVIT IN
                                                   OPPOSITION TO HABEAS PETITION
                        Petitioner,

        -against-                                  16-CV-3676 (JFB)


THOMAS GRIFFIN,

                        Respondent.
-------------------------------------------------------------x

STATE OF NEW YORK )
                          ) ss.:
COUNTY OF NASSAU  )

        LAURIE K. GIBBONS, being sworn, deposes and states as follows:

        1.      I am an assistant district attorney, of counsel to Madeline Singas, District Attorney

of the County of Nassau, and am admitted to practice before this Court.

        2.      This affidavit is submitted in opposition to petitioner's application for habeas

corpus relief.

        3.      By agreement with the Office of the New York State Attorney General, the Nassau

County District Attorney's Office is representing respondent in this matter.

        4.      Unless otherwise indicated, the following statements are made upon information

and belief, based upon the records and files of the Nassau County District Attorney's Office

concerning petitioner's state criminal prosecution.

i

5.      On the afternoon of September 24, 2010, petitioner took J.V.,[1] his ten-year-old neighbor, into a park bathroom in Westbury, Nassau County.  There, petitioner placed first his finger, and then his penis, in J.V.'s vagina.  Two of J.V.'s friends saw J.V. and petitioner exit the bathroom.  They told J.V.'s parents, Susana and Armando Villatoro, what they had seen.  A Nassau County Police Officer took a report.  Four days later, on September 28, 2010, petitioner and Armando had a physical altercation in front of Armando's home.  After the fight, petitioner and his friends ran away.  Armando attempted to walk to his house but collapsed, bleeding from twelve stab wounds to his torso, on his front lawn.  He later died from his injuries.  A knife bearing Armando's blood was discovered down the street in front of petitioner's house.

6.      Petitioner was arrested nearly two months later, on November 26, 2010, at Pennsylvania Station in New York City.  He was charged with one count of second-degree murder (New York Penal Law [hereinafter "Penal Law"] § 125.25[1]), one count of first-degree rape (Penal Law § 130.35[3]), two counts of first-degree sexual abuse (Penal Law § 130.65[3]), two counts of fourth-degree criminal possession of a weapon (Penal Law § 265.01[2]), and one count of endangering the welfare of a child (Penal Law § 260.10[1]).  On December 20, 2011, the jury acquitted petitioner of one of the weapon-possession counts and convicted him of the remaining charges.

7.      On June 15, 2012, the court sentenced petitioner to an indeterminate term of imprisonment of twenty-five years to life for his murder conviction, a determinate prison term of seven and one-half years to be followed by twenty years' post-release supervision for his rape conviction, two determinate prison terms of four years to be followed by ten years' post-release supervision for his sexual abuse convictions, and two definite one-year terms for his convictions

---

[1] To ensure privacy, respondent will refer to the rape victim as "J.V."

of weapon possession and endangering.  The murder and rape sentences were ordered to run consecutively to each other and concurrently with the remaining sentences.

8.     Petitioner appealed from the judgment to the New York State Supreme Court, Appellate Division, Second Department (hereinafter "Appellate  Division"), arguing that: (1) the evidence of second-degree murder was legally insufficient and the verdict as to that count was against the weight of the evidence; (2) the jury's verdict that petitioner was guilty of first-degree rape was against the weight of the evidence; (3) the hearing court erroneously denied petitioner's motion to suppress his videotaped statement after finding that petitioner had not made an unequivocal request for counsel; and (4) the trial court erred in refusing to sever the assault and sexual assault charges.  The Appellate Division unanimously affirmed petitioner's judgment of conviction.  *People v. Bonilla*, 127 A.D.3d 985 (2d Dept. 2015).

9.     In a letter dated May 18, 2015, petitioner sought leave to appeal to the New York State Court of Appeals (hereinafter "Court of Appeals") from the Appellate Division's decision. In his application, petitioner argued only that the Appellate Division had erred in upholding the hearing court's decision to deny petitioner's suppression motion.  On July 29, 2015, the Court of Appeals (Fahey, J.) denied petitioner's leave application. *People v. Bonilla*, 25 N.Y.3d 1198 (2015).

10.     On June 23, 2016, petitioner filed the instant petition for a federal writ of habeas corpus, claiming that: (1) his second-degree murder conviction was based on legally insufficient evidence, and the People failed to prove his guilt of first-degree rape; and (2) the Appellate Division's determination that the hearing court did not err when it denied petitioner's motion to suppress the videotaped statement was an unreasonable application of clearly-established federal law.

11.     The petition is timely.  However, this Court should reject petitioner's claims.  His claim that the People's evidence of second-degree murder was not legally sufficient is unexhausted, as he failed to raise it in his application for leave to appeal from the Appellate Division's order affirming his judgment of conviction.  Because he can no longer raise this claim in New York's highest court, this Court should deem the claim exhausted but procedurally barred.  Moreover, this Court has no power to review petitioner's claim that his conviction of first-degree rape was against the weight of the evidence.  Finally, the Appellate Division's decision upholding the hearing court's denial of petitioner's suppression motion was not unreasonable.  Thus, none of petitioner's claims warrants habeas relief.

12.     Pursuant to this Court's order dated July 26, 2016, respondent is providing the Court with the following documents: the Supreme Court transcripts of petitioner's hearing, trial, and sentence; petitioner's and respondent's briefs with regard to the direct appeal; the papers filed in connection with petitioner's application for leave to appeal to the New York State Court of Appeals; and all relevant New York State court decisions and opinions.

WHEREFORE, for the reasons set forth in this affidavit and in the accompanying memorandum of law, the petition for a writ of habeas corpus should be summarily denied.

s/Laurie K. Gibbons
LAURIE K. GIBBONS
Assistant District Attorney

Sworn to before me this
6th day of October, 2016

s/Susan Beallias
Notary Public
SUSAN BEALLIAS
Notary Public, State of New York
No. 30-4728937
Qualified in Nassau County
Commission Expires April 30, 2018

iv

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

ULISES BONILLA,

                             Petitioner,           16-CV-3676 (JFB)

        -against-

THOMAS GRIFFIN,

                             Respondent.

------------------------------------------------------------------x

## RESPONDENT'S MEMORANDUM OF LAW

                                       Respectfully submitted,

                                       Madeline Singas
                                       District Attorney, Nassau County
                                     Attorney for Respondent
                                     262 Old Country Road
                                     Mineola, New York 11501
                                     (516) 571-3800

                       By:    s/Laurie K. Gibbons
                              LAURIE K. GIBBONS

Tammy J. Smiley
Laurie K. Gibbons
 Assistant District Attorneys
   *Of Counsel*

<u>STATEMENT OF FACTS</u>

Respondent adopts and incorporates herein the statement of facts from the State's brief filed in response to petitioner's appeal from the judgment at pp. 1-28.  Any additional facts relevant to a determination of the petition are set forth in the points below.

POINT I

PETITIONER'S LEGAL SUFFICIENCY AND WEIGHT-OF-THE-EVIDENCE CLAIMS ARE PARTLY PROCEDURALLY BARRED, PARTLY PRESENT NO FEDERAL CONSTITUTIONAL ISSUE, AND IN ANY EVENT DO NOT MERIT HABEAS RELIEF (responding to Ground One of the Petition).

On appeal to the Appellate Division from his judgment of conviction, petitioner argued that the People offered insufficient evidence that he stabbed Armando Villatoro or that he possessed the knife used in the stabbing. *See* Petitioner's State Brief at 11-18. He also argued that the jury's verdict, finding him guilty of first-degree rape, was against the weight of the evidence. *Id.* at 25-31. The Appellate Division rejected his claims. *See Bonilla*, 86 A.D.3d at 580. Now, petitioner repeats his claim that "the People produced very little 'direct' evidence at trial that petitioner stabbed [Armando] and no such evidence linked him to the knife allegedly used in the stabbing." Memorandum of Law at 2. Petitioner also again argues that his conviction of first-degree rape was against the weight of the evidence. *Id.* at 9. Petitioner's legal sufficiency claim should be deemed exhausted but procedurally barred because petitioner failed to raise it in his leave application to the Court of Appeals, and he is now foreclosed from obtaining substantive review of it in the state appellate courts. In any case, the claim lacks merit. Moreover, petitioner's weight-of-the-evidence claim is not cognizable on federal habeas review.

To begin, review of petitioner's legal-sufficiency claim is procedurally barred because he failed to exhaust it. In order to exhaust a claim, a petitioner must fairly present it to the highest state court able to hear it. *See Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005); *Daye v. Attorney General*, 696 F.2d 186, 190, n.3 (2d Cir. 1982). In his application for leave to appeal to the Court of Appeals, however, petitioner raised only a suppression claim, and did not raise any claim pertaining to legal sufficiency. His failure to fairly present that claim to the highest New York state court renders it unexhausted. *See Rivera v. Henderson*, 690 F. Supp. 1191 (E.D.N.Y. 1988).

Having failed to present his legal sufficiency claim to the Court of Appeals, there is now no procedural mechanism for petitioner to raise it before any state court. *See Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001). Accordingly, the claim is unexhausted but should be deemed procedurally barred. *See Sanchez-Llamas v. Oregon*, 548 U.S. 331, 351 (2006); *Coleman v. Thompson*, 501 U.S. 722, 732, 749-51 (1991). This Court may reach the merits of petitioner's legal sufficiency claim only if he first demonstrates "either cause and actual prejudice, or that he is actually innocent." *Jones v. Keane*, 329 F.3d 290, 296 (2d Cir. 2003). Here, the petition does not even acknowledge that petitioner's legal claim is unexhausted, much less attempt to meet the cause/actual prejudice standard. This deficiency precludes review of his claim.

Regardless, as a matter of federal constitutional law, the Appellate Division correctly found that the evidence was legally sufficient to establish petitioner's guilt of second-degree murder beyond a reasonable doubt. A habeas corpus petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence supporting his state conviction. *See Einaugler v. Supreme Court of the State of New York*, 109 F.3d 836, 840 (2d Cir. 1997). He must demonstrate that the Appellate Division's decision finding that the evidence was legally sufficient was contrary to, or involved an unreasonable application of, clearly established federal law, which holds that the evidence is legally sufficient if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis omitted); *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002); *Copeland v. Walker*, 258 F. Supp.2d 105, 117 (E.D.N.Y. 2003).

Here, as demonstrated more extensively in the State's appellate brief at 29-37, the evidence was legally sufficient to prove that petitioner was guilty of second-degree murder. J.V. testified

that petitioner assaulted her in Bunkyreid Park on September 24, 2010.  Stephen Destina and Ivan Alcantara supported her account by testifying that they saw petitioner take J.V. into the bathroom at the park, and that J.V. was adjusting her skirt as she and petitioner exited the bathroom a short while later (T433-36, 441, 453-55, 677-89, 698, 705).[2]  Moreover, Armando's friend Angel Leon, his wife Susana Villatoro, and his daughter Nancy Villatoro testified that Armando was very upset with petitioner as a result of the assault (T473-75, 493-94, 516-17, 525, 774-75).  These witnesses, along with petitioner's friends Jocelyn Gonzalez and Misael Berrios, further testified that petitioner was angry at Armando for talking about him to others and confronting him at a deli.  Petitioner wanted to fight Armando "one-on-one" (T477-78, 482, 491-96, 637-41, 653-54, 772, 932-33, 962-63).

Then, on September 28, 2010, witnesses saw petitioner and Armando fighting one another, with petitioner aiming his blows at Armando's left torso.  These witnesses testified that the two men were fighting very close to one another; indeed, because there was very little light, it appeared as if petitioner and Armando were hugging (T485, 515, 644, 776, 805, 936).  The witnesses further testified that no one else fought with petitioner and Armando.  They heard Berrios announce, when Susana tried to intercede, that the fight was between the two men (T486, 508, 510, 646, 779, 805-06, 936, 965, 992).

Armando's family, along with responding emergency personnel, testified that, following the fight, Armando was bleeding heavily from his torso (T508, 511-12, 541, 556, 807).  The medical examiner testified that Armando had sustained twelve stab wounds in the left side of his neck, chest, and abdomen (T900-02).  And, of course, Berrios testified that, as he and petitioner

---

[2] Numbers in parentheses preceded by "H" refer to the pages of the pretrial hearing transcript. Numbers in parentheses preceded by "T" refer to the pages of the trial transcript.

ran from the scene, petitioner said, "I fucked up.  I stabbed him.  I got him.  You are good.  I fucked up.  I'm done" (T939, 944-45, 951-54).

Armando's family also testified that they saw petitioner run away in the direction of his house, at 163 Kinkel Street, and get into the Acura of petitioner's sister Diana Bonilla (T489-91, 513-14, 649, 781-82, 809).  Detective Kenneth Mazzie testified that he recovered a bloody knife from the street in front of 163 Kinkel Street (T567).  Forensic geneticist Erika Sima testified that Armando's blood was on the knife (T852).  Sima also testified that Armando's blood was on swabs taken from the rear seat back and rear door of the Acura, as well as those taken from a box found in the backseat (T851-52).  Petitioner's blood was found on the swabs taken from the Acura's rear door panel and rear ceiling (T851).

Finally, Detective Cereghino detailed his weeks-long campaign to find petitioner, including the receipt of anonymous tips, corroborated by petitioner's online activity, that petitioner had fled to Boston (T1003-04).  Cereghino testified that he finally apprehended petitioner at Pennsylvania Station in New York City on November 26, 2010, nearly two months after the stabbing (T1005).

Viewing this evidence in the light most favorable to the People, a rational jury clearly could have concluded, beyond a reasonable doubt, that petitioner intended to, and did, murder Armando by stabbing him with a knife. *See* Penal Law § 125.25(1); *see also Jackson*, 443 U.S. at 319.  Nonetheless, petitioner repeats his contention, made in the Appellate Division, that the evidence was not legally sufficient because Berrios was not a credible witness. *See* Memorandum of Law at 2-5.  Petitioner points to the facts that Berrios: testified in exchange for immunity from prosecution for his possession of the gun; had a criminal history; did not speak to police immediately after the stabbing; and testified contradictorily. *Id.*  But these complaints feature issues of credibility, the jury's finding of which should be given "[f]ederal deference." *Corse v. Heath*, 11-CV-5371 (SJ),

2016 WL 4257759, at *14 (E.D.N.Y. Aug. 11, 2016) (citing *Maldonado v. Scully*, 86 F.3d 32, 35 [2d Cir. 1996]); *see also United States v. Brooker*, 526 Fed.Appx. 82, 84 (2d Cir. 2013) ("All issues of credibility, including the credibility of a cooperating witness, must be resolved in favor of the jury's verdict.").[3]

Petitioner's demand that the Appellate Division should have found that Berrios was incredible as a matter of law should be rejected. Again, "[c]redibility determinations are exclusively the province of the jury, and will be invaded on collateral attack only when a witness' testimony is 'so incredible that no reasonable juror could believe him.'" *Arriaga v. Warden, Sing Sing Corr. Facility*, 13-CV-6060 (JFK), 2016 WL 3748495, at *15 (S.D.N.Y. July 11, 2016) (quoting *United States v. Shulman*, 624 F.2d 384, 388 [2d Cir. 1980]). That was not the case here. Berrios's testimony, rather than being incredible, was both consistent and corroborated by several witnesses. Berrios testified consistently, on direct and cross-examination, regarding several details -- including that he shot the gun because he wanted to keep others out of the fight between petitioner and Armando (T936, 965, 992); that petitioner, and not their friend Nigger, gave Berrios the gun before the fight (T934, 965); and that Berrios alerted petitioner to Armando's presence prior to the fight (T935, 966). Moreover, many aspects of Berrios's testimony -- including that he fired a gun into the air (T936); that petitioner approached Gonzalez's car to speak to Gonzalez and Nancy prior to the fight (T933-34); that Armando arrived at the scene of the fight followed by friends (T970); that petitioner and Armando were fighting very close together (T936); and that Berrios donned a mask toward the end of the fight (T937) -- were corroborated by other witnesses (T485, 486, 508, 510, 515, 638-44, 646, 655, 776, 788, 805, 806).

---

[3] Respondent will provide petitioner with copies of all unpublished decisions.

Nevertheless, even without Berrios's testimony, the Appellate Division's finding that there was sufficient evidence of petitioner's guilt of murder was in keeping with federal law.  "[T]he prosecution provided an array of circumstantial evidence suggesting that petitioner had both motive and opportunity to commit the murder[]" (*Yara v. Ercole*, 558 F. Supp. 2d 329, 339-40 [E.D.N.Y. 2008]), including the impetus for the fight between petitioner and Armando, the logistics of the fight itself, the physical evidence recovered from the scene, and petitioner's own actions in absconding after Armando's death.  While petitioner complains that there was no "real direct evidence" of his guilt (Memorandum of Law at 5), "a conviction may be based upon circumstantial evidence and inferences based upon the evidence and the jury is exclusively responsible for determining a witness'[s] credibility." *United States v. Strauss*, 999 F.2d 692, 696 (2d Cir. 1993) (citations omitted).  Ultimately, here, drawing all inferences in favor of the prosecution, a rational trier of fact would have found that petitioner did, in fact, kill Armando, and the Appellate Division's decision to that effect was not an unreasonable application of federal law.

Lastly, the Court should not review petitioner's weight-of-the-evidence claim regarding his first-degree rape conviction.   "[A] federal habeas court cannot "reexamine state-court determinations on state-law questions." *Theard v. Artus*, 09-CV-5702 (NGG) (LB), 2012 WL 4756070, at *13 (E.D.N.Y. Aug. 27, 2012) (quoting *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *see also Bester v. Conway*, 778 F. Supp.2d 339, 345 (W.D.N.Y. 2011) ("A 'weight of the evidence' argument is a pure state law claim grounded in the criminal procedure statute.") (citation omitted).

Thus, because unlike the state intermediate appellate courts (*see People v. Bleakley*, 69 N.Y.2d 490

[1987]), federal habeas courts have no power to review the weight of the evidence supporting the

jury's verdict (*see Young v. Abrams*, 698 F.2d 131, 135 [2d Cir. 1983]), petitioner's weight-of-the-

evidence claim is not cognizable and should be summarily rejected. [4]

---

[4] Petitioner attempts to avoid this obstacle by deeming this claim an "insufficiency claim." Memorandum of Law at 14.  However, on direct appeal, petitioner raised only a weight-of-the-evidence claim regarding his first-degree rape conviction -- as reflected not only by his appellate brief (*see* Petitioner's State Brief at 20-31), but also by the fact that the Appellate Division's sole holding as to that conviction was that it was "not against the weight of the evidence" (*Bonilla*, 127 A.D.3d at 986) -- and his arguments in the petition mirror his arguments in support of that claim. Nevertheless, should the claim be viewed as a legal sufficiency claim, it should nevertheless be rejected, as petitioner never raised such a claim as to his rape conviction on direct appeal, and he is foreclosed from doing so in any state court now.  A sufficiency claim regarding his rape conviction is therefore, as with his murder conviction, unexhausted and should be deemed procedurally barred. *See Sanchez-Llamas*, 548 U.S. at 351; *Coleman*, 501 U.S. at 732; *Aparicio*, 269 F.3d at 91; *Rivera*, 690 F. Supp. 1191.

POINT II

THE HEARING COURT'S DECISION DENYING PETITIONER'S MOTION TO SUPPRESS HIS VIDEOTAPED STATEMENT TO THE POLICE WAS NOT CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW; INDEED, PETITIONER NEVER MADE AN UNEQUIVOCAL REQUEST FOR COUNSEL (answering Ground Two of the Petition).

As he did in the state court, petitioner takes issue with the hearing court's finding that he did not make an unequivocal invocation of his right to counsel prior to giving a videotaped statement to the police.[5] *See* Memorandum of Law at 17.  On direct appeal, petitioner specifically argued that he invoked his right to counsel after Detective Cereghino read the *Miranda* warnings, and that Cereghino therefore should have ceased questioning and permitted petitioner to consult with an attorney. *See* Petitioner's State Brief at 51-53.  Petitioner acknowledged that the People did not use that statement at trial, but concluded that he was nevertheless prejudiced by the hearing court's decision because it prevented him from testifying at trial. *Id.* at 54-56.  This claim does not warrant habeas relief.

Again, a habeas claim must be rejected unless the state court's adjudication of that claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  A review of the governing law reveals that the Appellate Division's determination, that "the record support[ed] the Supreme Court's finding that [petitioner] did not unequivocally request the assistance of counsel before making statements to law enforcement officials" (*Bonilla*, 127 A.D.3d 985), was not contrary to federal law or an unreasonable application of that law to the facts adduced at the suppression hearing.

---

[5] A DVD depicting the entire time that petitioner was in the interview room and a transcript of the interview were entered into evidence (H23-24, 27-28; People's Exhibit 2 [DVD]; People's Exhibit 3 [transcript]).  A copy of the DVD and transcript will be provided to this Court upon request.

Federal precedent holds that the questioning of a suspect in custody may proceed until or unless the suspect clearly requests an attorney.  "To invoke the right to counsel, however, a suspect must speak clearly enough 'that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.'" *Wood v. Ercole*, 644 F.3d 83, 91 (2d Cir. 2011) (quoting *Davis v. United States*, 512 U.S. 452, 459 [1994]).  More specifically, "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, [Supreme Court] precedents do not require the cessation of questioning." *Davis*, 512 U.S. at 459 (emphasis in original).  Indeed, federal law holds that, when presented with an ambiguous statement, the police are not required to "ask questions to clarify whether the accused wants to invoke his or her Miranda rights." *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010); *see also Davis*, 512 U.S. at 459 (expressly declining to "require law enforcement officers to cease questioning immediately upon the making of an ambiguous or equivocal reference to an attorney"). Thus, in *Davis*, the Supreme Court determined that the petitioner's statement, "Maybe I should talk to a lawyer," did not constitute an unequivocal invocation of his right to counsel, and "there [was] no ground for suppression of [his] statements." *Davis*, 512 U.S. at 462.

Here, following Detective Cereghino's reading of petitioner's rights, Cereghino asked, "[A]re you willing to answer questions?"  Petitioner responded, "I don't know if I could call a lawyer or something."  At the pretrial hearing, Cereghino stated that he was not sure what petitioner meant by that statement, so the detective asked petitioner to repeat himself, at which point petitioner said, "I don't know if I could call somebody to call me a lawyer or something." Cereghino assured petitioner that the decision was his.  Petitioner then asked whether he could make a phone call.  Cereghino replied, "Ultimately, yes . . . but I'm asking you now if you want to

10

speak to me without a lawyer being present."  At the hearing, Cereghino testified that petitioner

thought for a moment.  Petitioner then said, twice, that he would speak to the detective (H60-62;

People's Exhibit 3 at 6-7).

The hearing court's determination, that petitioner's references to a lawyer fell short of an

unequivocal invocation of his right to counsel, was entirely in line with federal law on the matter.

Indeed, the circumstances here are akin to those in *Davis*; there, after the petitioner stated, "Maybe

I should talk to a lawyer," the agents who were questioning him asked him to clarify whether he

was asking for an attorney.  Ultimately, the petitioner confirmed that he did not want to speak to

an attorney. *Davis*, 512 U.S. at 455.  Similarly, here, petitioner made a statement referencing a call

to an attorney, whereupon Cereghino both asked petitioner to repeat himself and told petitioner

that calling a lawyer was "up to you."  After thinking it over, petitioner agreed to speak to the

detective.  In both cases, the counsel-related comment did not reach the "requisite level of clarity"

for the interrogation to cease. *Davis*, 512 U.S. at 459; *see also Wilson v. Bradt*, 13-CV-6937 (KBF),

2014 WL 4116960, at *15 (S.D.N.Y. Aug. 20, 2014) (petitioner's "use of the word 'maybe,' in

conjunction with the fact that petitioner continued to cooperate without speaking to an attorney,

evinces only a possible assertion of the right to counsel -- not a clear one").

Petitioner now states that he was, in fact, requesting an attorney. *See* Memorandum of Law

at 20.  While petitioner may well have intended to invoke his right to counsel by stating, "I don't

know if I could call a lawyer or something" (H60; People's Exhibit 3 at 6), the fact remains that he

"failed to express his intent reasonably clearly." *Diaz v. Senkowski*, 76 F.3d 61, 64 (2d Cir. 1996)

(finding that the petitioner's statement, "I think I want a lawyer," was insufficiently clear).  And,

"[i]n the absence of such a clear statement . . . a suspect's intent is not the controlling factor." *Id.*;

*Chandler v. Napoli*, 08-CV-3284 (KAM) (VVP), 2011 WL 4382265, at *9 (E.D.N.Y. July 19,

2011) ("Police officers are not required to divine a suspect's invocation of the right to counsel absent an affirmative request for one.").

More likely, petitioner's questions regarding phone calls constituted an inquiry about his ability to make a phone call generally.  Again, when Cereghino advised petitioner that it was "up to you" whether to call an attorney, petitioner amended his statement and asked, simply, whether he could make a phone call.  When subsequently permitted to make a call, petitioner chose to call his mother, rather than an attorney (People's Exhibit 3 at 177).  Moreover, petitioner later confirmed that he had deliberately waived his right to counsel; during the interview, he told Detectives Cereghino and Aponte that the basis for his decision "to talk to you guys not even with a lawyer over here" was "[j]ust to explain to you guys, you know?" (People's Exhibit 3 at 77). *See, e.g.*, *Wilson*, 2014 WL 4116960, at *16 (that petitioner, during his conversation with detectives, indicated that he later would hire an attorney, militated against a finding that petitioner had unequivocally invoked his right to counsel prior to the conversation).

Notably, petitioner implicitly acknowledges that his statements were ambiguous, as he insists that Cereghino should have "clarif[ied] 'what [petitioner] wanted or what he was referring to.'" Memorandum of Law at 19.  But Cereghino did just that, first asking petitioner to repeat himself, then reminding petitioner that he could speak to an attorney, and finally asking, again, whether petitioner was willing to speak without an attorney present.  In parsing petitioner's equivocation, Cereghino engaged in a "good," though unnecessary, "police practice." *Davis*, 512 U.S. at 461.

Under all the circumstances, the hearing court's determination that petitioner did not make an unequivocal request for counsel, and the Appellate Division's decision upholding that determination, were entirely in line with federal law on the issue.  Notably, the hearing court not

only observed Cereghino's testimony, but it repeatedly watched the videotaped interview and read the transcript (H60-61, 72), and its informed decision should be accorded deference. *See generally Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (noting the "deferential standards prescribed by" 28 USC § 2254); *Miller v. Fenton*, 474 U.S. 104, 112 (1985) ("And the federal habeas court, should, of course, give great weight to the considered conclusions of a coequal state judiciary."); *Tineo v. Heath*, 09-CV-3357 (SJF), 2012 WL 4328361, at *12 (E.D.N.Y. Sept. 9, 2012) ("Upon review of the hearing record under AEDPA's deferential standard of review, the finding of the state courts that petitioner had not personally invoked his Fifth Amendment right to counsel prior to making the statements to law enforcement officers was not unreasonable.") (citing 28 USC § 2254[d], [e]).

Should this Court disagree with the Appellate Division and determine that petitioner made an unequivocal invocation of his right to counsel, and thus that the hearing court should have granted his motion to suppress the videotaped statement, the Court should nevertheless reject petitioner's claim of error, as he was not harmed thereby. The error, if made, is harmless where it did not have "a substantial and injurious effect or influence in determining the jury's verdict." *Nappi v. Yelich*, 793 F.3d 246, 250-51 (2d Cir. 2015) (quotation omitted); *see also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007).

Here, petitioner cannot possibly establish that the hearing court's determination that petitioner's videotaped statement was admissible at trial had a substantial and injurious effect on the jury's verdict -- and indeed, he does not even try. Petitioner acknowledges, as he must, that the People did not offer the videotaped statement on their direct case. *See* Memorandum of Law at 15. Accordingly, petitioner cannot allege that the jury was in any way influenced by the statement itself. *See Wilson*, 2014 WL 4116960, at *14 n.16 (petitioner's statements to the assistant district

attorney were "a non-issue at this point because they were not introduced at trial"); *see also, e.g.*, *Cruz v. McGinnis*, 11-CV-3442 (JG), 2011 WL 5848579, at *11 (E.D.N.Y. Nov. 22, 2011) (any constitutional error in accepting an allegedly invalid appeal waiver during plea allocution was harmless, as petitioner ultimately appealed from the conviction, and two of his claims on appeal were reviewed on the merits).

Faced with this utter lack of demonstrable prejudice, petitioner attempts to conjure constitutional error by asserting that the hearing court's decision prevented him from testifying in his own defense, as the People could have used the statement to impeach him with the statement if he had chosen to testify. *See* Memorandum of Law at 16. Petitioner's argument is unfounded.

Petitioner correctly states that, if involuntarily made, a defendant's statement may not be used to impeach him if he chooses to testify. *See id.* However, petitioner's claim is not that his statement was involuntary; rather, he argues that it was obtained in violation of his right to counsel. *See, e.g.*, *Parsad v. Greiner*, 337 F.3d 175, 184 (2d Cir. 2003) (finding no claim of involuntariness because "petitioner [did] not establish that the detectives employed coercive or improper tactics during their interrogation" but rather argued that they "ignored his initial statement that he did not wish to say anything"). Such an allegedly illegally-obtained statement, while inadmissible on the People's direct case, may be used to impeach a petitioner on cross-examination. *See generally Oregon v. Hass*, 420 U.S. 714 (1975); *Harris v. New York*, 401 U.S. 222 (1971). As the Supreme Court has stated, "the shield provided by *Miranda* is not to be perverted to a license to testify inconsistently, or even perjuriously, free from the risk of confrontation with prior inconsistent utterances." *Hass*, 420 U.S. at 722. This rule highlights "the importance of arriving at the truth in criminal trials and the defendant's obligation to speak the truth in response to proper questions." *James v. Goord*, 02-CV-1174 (DC), 2004 WL 1207906, at *10 (S.D.N.Y. June 1, 2004) (citations

14

omitted). Thus, whether or not the hearing court ruled petitioner's statement inadmissible on right-to-counsel grounds, he would have been subject to impeachment with that statement, if he chose to testify. His repeated protestations of prejudice from the court's allegedly improper refusal to suppress the statement should be rejected.

Moreover, the evidence against petitioner, as laid out herein and in the State's appellate brief at 29-56, was overwhelming. There was ample testimony establishing that petitioner intended to, and did, stab Armando Villatoro with a knife. The People's evidence also decisively established that petitioner raped and sexually assaulted J.V. Accordingly, even if the hearing court wrongly denied petitioner's suppression motion, having a "'chilling effect' on [his] decision to testify in his own defense" (Memorandum of Law at 16), "any constitutional error was harmless." *Stanley v. Smith*, 12-CV-6362 (AT) (SN), 2014 WL 5039444, at \*20-21 (S.D.N.Y. Sept. 26, 2014) (even if lineup were unduly suggestive, "the evidence was sufficient to establish [petitioner's] guilt such that he cannot show that it had substantial and injurious effect in influencing the jury's verdict"); *Ramos v. Racette*, 11-CV-1412 (JG), 2012 WL 12924, at \*22 (E.D.N.Y. Jan. 4, 2012) (trial court's encroachment on petitioner's right to proceed *pro se* was harmless error where "the proof of [petitioner's] guilt was in fact established beyond a reasonable doubt").

Unsurprisingly, petitioner utterly fails to explain how his own testimony could have refuted the People's evidence. He does not provide even a single detail to which he would have testified, other than suggesting that, because testifying would have exposed him to impeachment, he would have disputed the information in his videotaped statement. *See* Memorandum of Law at 15-16. Significantly, because of the overwhelming evidence against him (which, again, did not include his videotaped statement), petitioner might have had reasons unrelated to the court's suppression ruling for choosing not to testify.

Finally, the trial court effectively prevented the jurors from drawing conclusions regarding petitioner's decision not to testify.  The court admonished the jurors that petitioner was not required to prove or disprove any of the People's evidence, and further that they should draw no unfavorable inference from his failure to testify (T1265, 1267-68).  They are presumed to have followed these instructions. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

In sum, the Appellate Division's finding, that the hearing court properly determined that petitioner had not made an unequivocal request for counsel, and thus that his videotaped statement was admissible at trial, was not an unreasonable application of federal law.  Regardless, even if that determination were error, petitioner was not harmed thereby.  Thus, this Court should reject petitioner's suppression claim.

<u>CONCLUSION</u>

THE PETITION FOR A WRIT OF HABEAS CORPUS SHOULD BE DENIED IN ALL RESPECTS.

Dated:    Mineola, New York
          October 6, 2016

Respectfully submitted,

Madeline Singas
District Attorney, Nassau County
Attorney for Respondent
262 Old Country Road
Mineola, New York 11501
(516) 571-3800

By:    <u>s/Laurie K. Gibbons</u>
       LAURIE K. GIBBONS

Tammy J. Smiley
Laurie K. Gibbons
  Assistant District Attorneys
     *Of Counsel*

17

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on October 6, 2016, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure and/or the Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service upon:

Ulises Bonilla
DIN 12-A-2559
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582

Madeline Singas
District Attorney, Nassau County
Attorney for Respondent
262 Old Country Road
Mineola, New York 11501
(516) 571-3800

By:     /s/Laurie K. Gibbons
        LAURIE K. GIBBONS