```
 1   STATE OF NEW YORK   :      NASSAU COUNTY
     SUPREME COURT       :        PART 37
 2   ---------------------------------------x

 3   THE PEOPLE OF THE STATE OF NEW YORK,

 4                -against-                    INDICTMENT NO.
                                              202N/11
 5   ULISES BONILLA,
                                              NYSID NO.
 6                        Defendant.          5853179M

 7   ---------------------------------------x
                      262 Old Country Road
 8                    Mineola, N.Y.  11501

 9                    May 15, 2012

10                    MINUTES OF SENTENCE

11

12   B E F O R E:   HON. GEORGE R. PECK
                    Acting Supreme Court Justice
13
     A P P E A R A N C E S:
14
                    HON. KATHLEEN M. RICE
15                  District Attorney of Nassau County
                    BY:  ZEENA ABDI, ESQ.,
16                  Assistant District Attorney,
                    Of Counsel, for the People
17
                    DANIEL MILLMAN, ESQ.
18                  Attorney for the Defendant
                    316A Main Street
19                  Roslyn, New York 11576

20
     ALSO PRESENT:  Kimberly Hernandez,
21                  Official Spanish Interpreter

22

23

24
                    Cindy Kaye-Fink
25                  Senior Court Reporter
```

```
 1              THE CLERK:  This is indictment 202N of 2011,
 2   Ulises Bonilla.  You are Ulises Bonilla?
 3              THE DEFENDANT:  Yes.
 4              THE CLERK:  Let the record reflect the
 5   presence of the Spanish interpreter, who is required for
 6   the defendant.
 7              Counsel, please note your appearances for the
 8   record.
 9              MS. ABDI:  For the People, Zeena Abdi,
10   assistant district attorney.  Good morning, your Honor.
11              MR. MILLMAN:  For the defendant, Daniel
12   Millman, 316A Main Street, Roslyn, New York.
13              THE CLERK:  Mr. Bonilla, you appear here with
14   your attorney for sentence under indictment 202N of
15   2011.
16              Counsel, is your client ready for sentence?
17              MR. MILLMAN:  Yes, your Honor.
18              THE CLERK:  Do the People wish to be heard?
19              MS. ABDI:  Yes, your Honor.  The People are
20   also advising the Court that the deceased's daughter,
21   Nancy Villatoro, would also like to speak at sentencing
22   before your Honor renders his ultimate sentence in this
23   case.
24              It is the People's position at this time, the
25   People are asking that your Honor sentence the defendant
```

1        to the maximum penalty allowable by law for each count

2        for which he was convicted.

3                I know your Honor was the trial judge in this

4        case and that your Honor is fully familiar with all the

5        facts surrounding this case, and what I think from the

6        People's perspective that stands out in this case is the

7        ultimate destruction that the defendant, Ulises Bonilla,

8        caused on the Villatoro family.

9                THE COURT:  And his own.

10               MS. ABDI:  And his own family, yes, your

11       Honor, by his actions in September of 2010.  He

12       ultimately destroyed a family and it is for these

13       reasons, because of the defendant's behavior during the

14       span of four or five days in which he continually

15       escalated a conflict between the father of Jennifer

16       Villatoro, and he damaged not only Jennifer Villatoro,

17       but Armando Villatoro and completely destroyed a family

18       in a very violent act in which Mr. Villatoro was stabbed

19       multiple times in front of his own house, in front of

20       his own children.

21               It's for these reasons, your Honor, that the

22       People are asking for the crimes for which he was

23       convicted, which include murder in the second degree and

24       rape in the first degree, that he be sentenced to the

25       maximum allowable on all the charges for which he's

ckf

1     convicted.

2             Your Honor, at this time I would ask if Nancy

3     Villatoro can say a few words to the Court regarding

4     this case.

5             THE COURT:  We have discussed this issue in

6     chambers and ordinarily, there is a statutory procedure

7     that must be gone through in order for a victim or a

8     victim's family to give such an impact statement.

9     However, we knew that this was a possibility and there

10    was no objection for this to occur.  Agreed,

11    Mr. Millman?

12            MR. MILLMAN:  Yes.  I was provided with notice

13    concerning this, your Honor.

14            THE COURT:  Very good.

15            MS. VILLATORO:  I would like to start off

16    saying good morning to everybody in the courtroom, to my

17    family and to Ulises's family.  I want to say that we

18    feel sorry for his family because they have to go

19    through all his mistakes that he did and that Ulises, he

20    was our friend back then, but now he did to us a lot of

21    things.  He did mess up our friendship.  He messed up

22    our family father, he took our father away.  We miss our

23    father now.  Now we don't have him by our side.

24            He has his family and Ulises honestly killed

25    himself by being in jail for the rest of his life.  He

ckf

1          honestly just should have took it and spoken to my

2     father about it.  His family has to understand that he

3     killed our father, his father is still alive.  They keep

4     trying to start problems with us, trying to say that

5     it's our fault, we're not the victims.  Our family,

6     we're the victims.  They should understand that his

7     mistakes were killing our father and he shouldn't have

8     never done that.  He's a grown man.  I believe he's 22

9     or 23.  He should have spoken to my father about it and

10    I believe his sister needs to honestly try to stop

11    calling us names every time she sees us.  She has to

12    understand herself that her brother killed our father

13    and that's not our fault.  And neither is it theirs.

14    They have to understand it's all his fault and he should

15    learn from his mistakes and not only that, all we ask

16    for is for justice and for him to serve his time and for

17    him to know that we don't hate him, none of us hate him.

18    We just hope that he learns from his mistakes and knows

19    that what he did was very wrong and that next time he

20    doesn't kill an honest man for no reason.

21              He was the one with the cause of my sister's

22    rape, because my sister is only 12 years old now and she

23    is suffering because of that.  All my family is

24    suffering because of the pain that we have in our heart.

25    And we don't deserve this, because my dad was a very

1        great man to us.  We see him as a very happy man and

2        that they took us -- they took him away from us and now

3        I hope he deserves time and I hope he realizes what he

4        does.  And not only that, I hope he does understand what

5        he did was very wrong to our family, because my family

6        deserves way much better.  And I just wish him good luck

7        in life and I hope he learns from his mistakes the first

8        time.  That's it.

9                    THE COURT:  Mr. Millman?

10                   MR. MILLMAN:  Yes.

11                   THE COURT:  Thank you.

12                   MR. MILLMAN:  Your Honor, first, before I

13       begin, I would just like to point out that here on

14       behalf of my client is numerous members of his family,

15       you know, including his mother and father, Reina and

16       Leonidas, his sisters, Diana and Reina, as well as

17       Zeida, his girlfriend, and her brother, and they are all

18       here in support of Ulises, to show their support for

19       him.

20                   Your Honor, first I just wanted to point out

21       that I understand that the Court has received a

22       probation report, a presentence report, and I recognize

23       that in that report, though my client was interviewed,

24       and it's my position that he completely cooperated with

25       them in every respect, I recognize that when he spoke

ckf

1        with them, he indicated that he is not -- he did not

2        commit those crimes.  He has maintained his innocence

3        from the beginning and continues to maintain his

4        innocence.

5                  I understand that we are here for sentence

6        today, your Honor.  But again, I would just hope that if

7        the Court concludes that the presentence report is in

8        any way negative, that it not base that conclusion on

9        the fact that he maintains his innocence, because I

10       don't believe, from my review of it, that it indicated

11       he failed to cooperate in any manner and I don't believe

12       that it was negative in any respect, based upon my

13       review of it, your Honor.

14                 Additionally, I've been asked to make a couple

15       of statements just on behalf of some of his family

16       members who have asked me to say certain things.  His

17       mother, Reina, has asked me to just point out to your

18       Honor that, you know, he is a good person, has been a

19       good person throughout his life.  He has been good to

20       his family.  He has been a hard-working individual.  I'm

21       advised by the family that they have never seen him

22       violent and that he had always worked.  He always helped

23       to support the household.

24                 I've been asked by Diana, his sister, and I'm

25       sure that all the family members concur in that as well,

1    that, you know, he has been a good brother to her.  He's

2    a good uncle to his nephews, he's a good father to his

3    child, who is five years old, Andrea.

4           That although the Court has heard testimony

5    and evidence concerning certain incident that occurred,

6    incidents, that the family hopes that the Court not just

7    perceive this solely through the limited telescope of

8    what was testified to in this trial, but rather also

9    through the eyes of what the family is indicating, that

10   he is a caring, loving individual and they say that with

11   the understanding that the crimes for which he has been

12   convicted are obviously, and it need not to be said,

13   very, very serious, clearly.

14          And I also can say that the family, all the

15   members of the family, their heart goes out to the

16   Villatoro family and, you know, whether or not they

17   realize this, this is said with a great deal of

18   sincerity.

19          I would also like to say that my heart, my

20   client's heart, our hearts go out to this family and

21   that is meant sincerely and I hope that they recognize

22   that.

23          There is no down playing the significance of

24   the loss that this family has suffered.  It's a

25   tremendous loss and it's a tragedy, there's no question

1        about it, and I do not and would not ever try to

2        downplay that, your Honor.

3              I've also be asked to point out by Zeida

4        Bonilla, his girlfriend, that Ulises has been actively

5        involved as a father and spends a lot of time with his

6        five-year-old daughter Andrea, and that he also has

7        helped to support Zeida, as well as his daughter, and

8        Zeida's other daughter, Adora, Alicia and her son, AB,

9        they are nine and eleven years old, and you know, the

10       family has asked your Honor to show as much leniency as

11       you possibly can under those circumstances, your Honor.

12             I would also like to just point out a couple

13       of things that I would ask your Honor to take into

14       account.  No amount of punishment, as a practical

15       matter, no amount of punishment could possibly undue the

16       harm that has occurred here, your Honor.

17             As your Honor is aware, the defense filed a

18       motion to set aside the verdict.  I understand that your

19       Honor has decided that motion against my client.  I

20       recognize that, so I am addressing the Court, based upon

21       the allegations that the jury has found him guilty of,

22       but I do want to stress that my client has and continues

23       to maintain his innocence and that our position remains

24       the same in terms of the appropriateness and accuracy of

25       the jury's verdict, your Honor.

ckf

1            The minimum for the murder, your Honor, is

2       itself, quite a heavy penalty, it's 15 years to life.

3       You know, there is no reason, your Honor, I would

4       submit, that he should not receive the minimum sentence

5       and when we hear the word minimum, your Honor, there's a

6       tendency to react and there is a tendency perhaps, as

7       some of the people in this courtroom, to react as if

8       it's not being taken seriously, but again, 15 years to

9       life, it is a life sentence.  And additionally, this is

10      not a minimum sentence for all crimes, this is a minimum

11      sentence for murder.  The legislature has adapted this

12      as the minimum for a murder.

13            THE COURT:  When you talk about this

14      particular area, can you tell me how you show mitigating

15      circumstances to the extent to reduce a sentence of 25

16      to life to 22 to life, to 18 to life or to 15 to life?

17      How do you show that when the victim suffered 12 stab

18      wounds?

19            MR. MILLMAN:  Well, I would start off by

20      addressing that in each and every murder there is always

21      going to be a suffering of wounds that inflict death by

22      definition.  Not down playing that, by any means, but --

23            THE COURT:  I'm mainly concerned about the

24      acts of the defendant in causing those wounds.

25            MR. MILLMAN:  Okay.  Well, and I will address

1    that.  As you know, your Honor, again, I just stress

2    that my client has maintained his innocence and our

3    position is the same regarding the accuracy of the

4    jury's verdict.

5                 That having been said, your Honor, the answer

6    to my question is that this was an encounter that

7    occurred on the street.  It was an encounter that, I

8    believe the evidence showed, there was evidence to

9    support the fact that Mr. Villatoro had gone there as

10   well, knowing that this was going to be a fight with my

11   client.

12                And under the circumstances, my client's age,

13   the fact that he has no prior criminal convictions, you

14   know, I believe that those are mitigating circumstances,

15   your Honor.  This was clearly a situation in which it

16   was the end product of a dispute that escalated into

17   something completely out of hand.

18                THE COURT:  We all know that at times that

19   people settle their problems by quote, duking it out,

20   unquote.  That does not necessarily mean that one of the

21   People involved in that kind of conduct should secrete a

22   weapon on him to use it, if he's getting the worst of

23   the deal.  Go ahead.

24                MR. MILLMAN:  And your Honor, no one is

25   suggesting that that is appropriate.  Again, as I said,

ckf

1    our position is that that is not what the evidence

2    showed, but I do have to address those allegations and I

3    recognize that.

4              THE COURT:  I understand.

5              MR. MILLMAN:  I will address that and say

6    again, this was an encounter that took place on the

7    street.  They both voluntarily submitted to the

8    encounter.

9              I would also point out, your Honor, that, you

10   know, as for the request for the maximum, entirely

11   inappropriate, your Honor.  You know, the justifications

12   for the maximum, I mean, the fact that someone has died

13   is no doubt a tragedy, again, I can't stress that

14   enough, but that is always the case in a murder.

15             So again, the question has to be, I think, if

16   your Honor is going to impose something more than the

17   minimum for the murder, the question has to be not why

18   this incident or this crime is more serious than other

19   non-violent crimes, like a larceny or something else,

20   but rather why this crime is more serious than other

21   murders, because the range from the minimum to the

22   maximum applies to murder and in all cases it will

23   involve a tragedy, in all cases there will be someone

24   that died and in all cases it will be violent.  Again,

25   we don't downplay that, but I think if your Honor is

ckf

1    going to impose more than the minimum, I would submit

2    that there should be a reason to distinguish this

3    particular murder as more serious than many other

4    murders, and I submit that under these circumstances,

5    this particular case calls for the minimum.  Again,

6    minimum for a murder, which is still an extremely heavy

7    sentence.

8         And additionally, your Honor, as I indicated,

9    I would ask your Honor to consider the circumstances of

10   this particular case.  I do believe, as I indicated,

11   that the substantial doubt casted by the record

12   regarding his guilt, you know, nobody saw a knife, no

13   one saw him even making an overhead stabbing motion, not

14   a shred of physical evidence links him to the knife or

15   the stabbing.  In fact, the physical evidence, as I

16   argued, pointed to others.

17        Your Honor, just also with regard to the rape,

18   you know, I understand what the jury has concluded.  I

19   do believe that there was significant credibility issues

20   with the victim in terms of the fact that she had given

21   numerous inconsistent statements to the police on very

22   key facts.  There was not a shred of physical evidence

23   that linked my client to this rape and in fact, three

24   witnesses, one of whom was a completely objective

25   witness, placed my client at another location at the

1      time that the prosecution said this took place.

2              Your Honor was there to observe her demeanor

3      and again, I say the following without intending in any

4      way to downplay the fact that any rape in the first

5      degree is serious, but even according to the testimony

6      of the victim herself, the degree of penetration, while

7      it would satisfy the statutory definition of

8      penetration, was just at the surface, even by her own

9      testimony, and by her own testimony, there was no

10     violence, hitting, anything of that nature.

11             Again, I recognize that consent is -- there is

12     no consent because of her age, but I do think that

13     certainly, this is clearly different than on many other

14     first degree rapes.  And again, in terms of the minimum

15     versus the maximum, I certainly believe that the only

16     appropriate sentence on the rape would be the minimum.

17             And the reason for that is that again, the

18     legislature has given the minimum and maximum.  If this

19     case, under these circumstances, does not warrant a

20     minimum sentence, what first degree rape scenario could

21     warrant a minimum?  Again, no allegation of hitting,

22     striking, anything.  The entry just barely satisfied the

23     statutory definition, just the surface.  Again, I don't

24     say it to downplay the seriousness of it, Judge, I'm

25     talking in terms of the sentence, minimum, maximum and I

1    clearly think under these circumstances, your Honor, the

2    case screams out for the minimum on the rape,

3    undoubtedly.

4         There is sometimes a tendency to characterize

5    anyone who has been convicted of a crime like this as a

6    hardcore violent criminal with a propensity to repeat

7    acts and again, as I indicated, he has never been

8    convicted of any crime and never engaged in a violent

9    act.

10        And additionally, you know, I understand that

11   sometimes the fire is fueled by -- and I'm not

12   suggesting that your Honor is going to let this

13   influence you, but sometimes there is an outcry for

14   tough sentences just for the purpose of reducing crime,

15   without regard to the circumstances of the particular

16   offense.

17        Again, your Honor presided over this trial and

18   your Honor has observed the demeanor of the witnesses,

19   observed the trial, and you know, I ask that your

20   Honor -- and I believe that your Honor will look at this

21   not just in a vacuum of what the actual title of the

22   crime was that he was convicted of, but also consider

23   the circumstances, the circumstances of the crime, what

24   was revealed during the course of the trial, and his

25   age, the lack of any prior criminal record.  I think

1    while obviously, the Court has and must consider the

2    seriousness of the charges, I ask that those not be the

3    only things looked at, your Honor.

4               And just a couple of more things, your Honor.

5    I would just ask your Honor to consider the fact that

6    even the very minimum on the murder charge and on the

7    rape charge will, you know, result in my client being

8    incarcerated for an extraordinary long period of time.

9    And even with a minimum, it would be a 15-to-life

10   sentence, meaning that if a parole board would

11   determinate after 15 years that he either was not

12   rehabilitated, he had not done anything in prison to

13   warrant him being considered, you know, to be released

14   on parole, that they would keep him in.

15              So I would ask your Honor to consider all of

16   the circumstances here and I would also ask your Honor

17   to consider the fact that, you know, there are people

18   who depend upon him, including a daughter that he has,

19   she's five years old.  And you know, I would ask your

20   Honor not to ignore the good, you know, that he has

21   done.

22              Again, I'm not suggesting that it would erase

23   the allegations here, if, in fact, they did occur, as

24   the jury indicated, but rather that it's just a factor

25   that should be considered.

ckf

1        One more thing, your Honor.  I just -- there

2   is a tendency to sometimes equate protestations of

3   innocence with a lack of remorse and again, I want to

4   point out that my client's heart and my heart and his

5   family's heart truly goes out to this family and

6   everything that they are suffering through, but my

7   client has maintained his innocence and, you know,

8   again, I don't believe that this Court should equate

9   that with any lack of remorse whatsoever.

10       And in a moment, my client does want to say a

11  couple of things to the Court, but before he does so, I

12  just ask your Honor to consider all the circumstances

13  here and impose the minimum for each of these crimes,

14  and make them concurrent.  And if your Honor is not

15  inclined to make them concurrent, at the very least,

16  impose the minimum for each of these offenses.  I do

17  feel the circumstances here warrant that, and so, your

18  Honor, I'm going to at this time ask that my client be

19  given an opportunity to be heard.

20              THE COURT:  Sir, do you wish to say anything?

21              THE DEFENDANT:  (English.) Yes, I do.

22              THE COURT:  Go ahead.

23              THE DEFENDANT:  (English.) I want to say sorry

24  for the victim's family, for all the pain they felt.  I

25  still maintain my innocence.

ckf

1          THE COURT:  Just one second.  You are speaking

2     to me in English and there are some nuances at this

3     particular time that I don't understand, so if you have

4     no objection, I would like you to speak through your

5     interpreter, so that I am absolutely sure that I am

6     understanding it correctly.

7          THE DEFENDANT:  (English.) All right.

8          (Through the interpreter.)  I want to say I'm

9     sorry to the family.  I still maintain that I am

10    innocent.  I'm sorry that I fought with the victim, but

11    I never hurt him.  And I am not upset with his daughter,

12    with the little one, because I know she has a reason why

13    she's lying.  But I believe that maybe sometime in the

14    future, she will come out and tell the truth.  And I'm

15    sorry to my family as well for what they're going

16    through.

17         And I'm still innocent, no matter what

18    happens.  Only time will tell what's going to happen.

19    That's it.

20         THE COURT:  The act of sexual penetration was

21    testified to by the victim, as well as corroborated by

22    medical evidence.  You were identified by the victim who

23    knew you.  You were also identified by two young men who

24    knew you, coming out of the women's bathroom with the

25    victim.  The evidence against you on the rape charge was

1     overwhelming.

2            I don't believe you when you say you are

3     innocent.  I believe that you are in a state of abject

4     denial.

5            The crime of murder was committed in a vicious

6     and intentional manner.  You could have walked away

7     after a single stab wound or multiple stab wounds and

8     perhaps the victim would have survived, since only two

9     of the wounds were fatal.  Your intent was clear.  You

10     destroyed a number of family, including your own.  Why

11     you wanted to have some sexual relationship with a

12     ten-year-old is beyond me, and at the same time,

13     maintain your allegiance to your wife and family is mind

14     boggling.

15            It's ordered and adjudged by this Court for

16     the crime of murder in the second degree, a Class A-1

17     felony, of which you stand convicted after trial, on

18     count 1 of the indictment, 202N of 2010, that you,

19     Ulises Bonilla, are hereby sentenced to an indeterminate

20     -- to an indeterminate term of imprisonment and the

21     maximum of such sentence to be life and the minimum of

22     such sentence to be 25 years, and that you be committed

23     to the custody of the New York State Department of

24     Correctional Services at Downstate Correctional

25     Facility, Fishkill, for imprisonment for the term of

1        that sentence, until released in accordance with the

2        law.

3                 A surcharge of $300, a $25 Crime Victims'

4        Assistance fee and $50 DNA surcharge are imposed on this

5        count.

6                 Counsel, I assume you want that by civil

7        judgment?

8                 MR. MILLMAN:  Yes, your Honor.

9                 THE COURT:  Civil judgment.  Not to be taken

10       from inmate funds.

11                For the second count, it is further ordered

12       that for the crime of rape in the first degree, a Class

13       B violent felony, of which you stand convicted after

14       trial on the second count of this indictment, that you

15       serve a determinate sentence of imprisonment of seven

16       and a half years to be followed by 20 years of

17       post-release supervision.  This sentence is to be served

18       consecutively to the sentence under the murder charge.

19                On the third count, for the crime of sexual

20       abuse in the first degree, a Class D violent felony, you

21       are sentenced to four years, to be followed by ten years

22       post-release supervision.

23                For the fourth count, for the crime of sexual

24       abuse in the first degree, a Class D violent felony, you

25       are sentenced to four years, to be followed by ten years

1    of post-release supervision.

2            For the crime of criminal possession of a

3    weapon in the fourth degree, a Class A misdemeanor, of

4    which you stand convicted under the fifth count, that

5    you be given a definite sentence of one year in the

6    Nassau County Correctional Center.

7            For the seventh count of endangering the

8    welfare of a minor, of which you stand convicted after

9    trial, that you be given a definite sentence of one year

10   in the Nassau County Correctional Center.

11           You are ordered to pay a $50 SORA fee and

12   additional sex fee of $1,000, also by civil judgment.

13           The sentences imposed -- the sentences under

14   the first count and the second count are to run

15   consecutive with each other.  The remaining counts are

16   to run concurrent.

17           THE CLERK:  Mr. Bonilla, you have the right to

18   appeal from this sentence and these proceedings.  If you

19   wish to appeal, you must file a notice of appeal with

20   the clerk of this court within 30 days.  If you cannot

21   afford to hire a lawyer or the minutes of these

22   proceedings, you may make application to the Appellate

23   Division which will, upon being satisfied that you

24   cannot afford the same, order that an attorney be

25   appointed and the minutes provided without any charge to

ckf

1          you.   Your lawyer is directed by the Court to advise you

2          in full and take the necessary steps indicated by you in

3          this regard.

4                       MS. ABDI:   Judge, just the indictment number

5          is 202N of 2011.   I believe it might have been said

6          2010, but the indictment number is 2011.

7                       THE COURT:   That's corrected.

8                    *          *          *

9          I, Cindy Kaye-Fink, Senior Court Reporter, hereby

10   certify that the foregoing is a true and correct transcript

11   of the within proceedings.

12

13

14                       _____
                           Cindy Kaye Fink
15                         Senior Court Reporter

16

17

18

19

20

21

22

23

24

25